# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **HAITHAM HASSAN,** | : | |
| | : | |
| Plaintiff, | : | **CIVIL ACTION** |
| | : | |
| v. | : | **No. 11-3485** |
| | : | |
| **CITY OF PHILADELPHIA; C.O. A. AWOLUSI; C.O. J. BAKER; C.O. BALLARD; C.O. D. BANKS; C.O. R. BARROW; C.O. M. BELL; C.O. R. BERGER; C.O. T. BROWN; C.O. T.K. BROWN; SGT. CARRION; C.O. COLLIER; C.O. D. COVIN; C.O. K. DAY; C.O. M. DIAZ; C.O. A. FEGGANS; C.O. T. FRAZIER; LT. J.J. FLOYD; SGT. C. FRYE; SGT. P. GRAYSON; C.O. T. GRIFFIN; C.O. E. GUZMAN; LT. HAMILTON; SGT. D. HARRIS; LT. E. HENRY; LT. A. HOLT; C.O. Q. HUDGINS; C.O. A. JOHNSON; C.O. K. JONES; C.O. R. JONES; C.O. R.E. JONES; C.O. M. LAUX; C.O. G. MALLOY; C.O. J. MATHEW; C.O. MCKENZIE; C.O. Y. MILLER; C.O. A. MORRISON; C.O. W. MULHOLLAND; C.O. A. ORANGE; C.O. S. OSUNKOYA; C.O. K. PAULLMAN; C.O. V. PIERRE; C.O. S. PRESLEY; C.O. T. ROBINSON; C.O. A. RODRIGUEZ; SGT. T. SAUNDERS; C.O. P. SERWINSKY; C.O. Y. SHARP; LT. S. SLADE; C.O. N. SUMMERS; SGT. S. THOMAS; C.O. D. TRIPPET; C.O. B. TUCKER; C.O. E. WILLIAMS; C.O. G. WILLIAMS; C.O. S. WILLIAMS; C.O. S. WILSON; C.O. R. WOODSON; C.O. V. ZOU,** | : : : : : : : : : : : : : : : : : : : : : : : : : | **JURY TRIAL DEMANDED** |
| | : | |
| Defendants. | : | |
| | : | |

**AMENDED COMPLAINT**

**PRELIMINARY STATEMENT**

1. This is a civil rights action brought under 42 U.S.C. § 1983 and raising supplemental state-law claims concerning the actions of defendant correctional officers in the Philadelphia Prison System who were deliberately indifferent to the serious medical needs of plaintiff Haitham Hassan and whose conduct resulted in a state created danger. The actions and conduct of the defendant officers are the result of a policy, practice, custom, and failure to train, all with deliberate indifference, on the part of defendant City of Philadelphia.

**JURISDICTION**

2. This Court has jurisdiction over the subject matter of this Complaint under 42 U.S.C. § 1983 and 28 U.S.C. §§ 1331, 1343(a)(3), 1343(a)(4), and 1367(a).

**PARTIES**

3. Plaintiff Haitham Hassan, age 29, is and was at all times relevant to this Complaint a resident of Schuylkill County, Pennsylvania.

4. Defendant City of Philadelphia is a municipality in the Commonwealth of Pennsylvania and owns, operates, manages, directs and controls the Philadelphia Prison System, which employs the below defendants.

5. The following defendants were at all times relevant to this Complaint employed as correctional officers ("C.O."), correctional sergeants ("Sgt."), or correctional lieutenants ("Lt.") in the Philadelphia Prison System and assigned to the Curran-Fromhold Correctional Facility: C.O. A. Awolusi; C.O. J. Baker; C.O. Ballard; C.O. D. Banks; C.O. R. Barrow; C.O. M. Bell; C.O. R. Berger; C.O. T. Brown; C.O. T.K. Brown; Sgt. Carrion; C.O. Collier; C.O. D. Covin; C.O. K. Day; C.O. M. Diaz; C.O. A. Feggans; C.O. T. Frazier; Lt. J.J. Floyd; Sgt. C. Frye; Sgt. P. Grayson; C.O. T. Griffin; C.O. E. Guzman; Lt. Hamilton; Sgt. D. Harris; Lt. E.

Henry; Lt. A. Holt; C.O. Q. Hudgins; C.O. A. Johnson; C.O. K. Jones; C.O. R. Jones; C.O. R.E. Jones; C.O. M. Laux; C.O. G. Malloy; C.O. J. Mathew; C.O. McKenzie; C.O. Y. Miller; C.O. A. Morrison; C.O. W. Mulholland; C.O. A. Orange; C.O. S. Osunkoya; C.O. K. Paullman; C.O. V. Pierre; C.O. S. Presley; C.O. T. Robinson; C.O. A. Rodriguez; Sgt. T. Saunders; C.O. P. Serwinsky; C.O. Y. Sharp; Lt. S. Slade; C.O. N. Summers; Sgt. S. Thomas; C.O. D. Trippet; C.O. B. Tucker; C.O. E. Williams; C.O. G. Williams; C.O. S. Williams; C.O. S. Wilson; C.O. R. Woodson; C.O. V. Zou (hereinafter referred to collectively as "individual defendants").

6. Each of the above individual defendants is sued in his or her individual capacity.

7. At all times relevant to this Complaint, all defendants acted in concert and conspiracy and were jointly and severally responsible for the harms caused to plaintiff.

8. At all times relevant to this Complaint, all defendants acted under color of state law.

**FACTUAL ALLEGATIONS**

9. Based on years of study and guidance from correctional professionals, policymakers of the City of Philadelphia are aware that many persons admitted to the custody of the Philadelphia Prison System suffer from medical conditions and infirmities that limit or inhibit mobility.

10. In particular, City policymakers are aware that seizure conditions are present to a much higher degree in an inmate population than in the general population.

11. City policymakers are aware, further, that requiring an inmate with a seizure condition to sleep on a top bunk presents serious risks of harm to the inmate should the inmate suffer a seizure and fall from the top bunk.

3

12. As a result of this knowledge and based on prior experience, the City of Philadelphia has a policy and practice whereby medical staff in the City's prison system may issue a "bottom bunk pass" to inmates for whom top-bunk assignments would present a serious risk of harm due to medical conditions.

13. As a result of prior litigation and informal pre-suit claims received by the City of Philadelphia Law Department, City policymakers are aware that correctional officers in the Philadelphia Prison System have frequently ignored bottom bunk passes issued by prison medical staff and assigned inmates with serious medical conditions to top bunks notwithstanding the fact that the inmates had medical conditions justifying the issuance of such a bottom bunk pass.

14. As a result of prior litigation and informal pre-suit claims received by the City of Philadelphia Law Department, City policymakers are aware that, as a result of correctional officers' actions as described above, inmates who were issued bottom bunk passes but assigned to top bunks have suffered serious injuries after falls from their assigned top bunks.

15. Notwithstanding this knowledge, City policymakers have failed to act to provide appropriate training, supervision, and/or discipline to correctional officers concerning compliance with bottom bunk passes issued by medical staff.

16. On August 1, 2009, Plaintiff Haitham Hassan was admitted to the Philadelphia Prison System due to an alleged failure to appear for a court date related to a minor driving under the influence charge.

17. Plaintiff has a number of chronic medical conditions requiring continuous monitoring and treatment.

18. In late 2008, plaintiff was diagnosed with a serious case of Lyme disease, a condition that caused him to suffer frequent seizures.

19. Additionally, plaintiff suffers from cardiac problems, including diminished ventricular ejection fraction.

20. These medical conditions, and others, limit plaintiff's mobility.

21. Upon his admission to the prison system, plaintiff went through the intake process at the Curran-Fromhold Correctional Facility.

22. At the conclusion of the intake process, plaintiff met with a member of the prison medical staff.

23. Plaintiff provided the medical staff member with his medical history and identified the chronic conditions described above.

24. Based on plaintiff's self report and as a result of the medical staff member's own efforts to verify plaintiff's medical conditions, the medical staff member issued a bottom bunk pass to plaintiff.

25. The issuance of the bottom bunk pass was noted in plaintiff's prison medical chart with the reference, dated 8/1/09: "Cardiac problems/Seizures…Bottom Bunk indefinitely."

26. After plaintiff completed the admissions process and after he was issued his bottom bunk pass, plaintiff was assigned to a housing area in the Curran-Fromhold Correctional Facility.

27. After he was assigned to his cell, plaintiff was told by one or more of the individual defendants that he would be required to sleep on a top bunk.

28. Plaintiff immediately complained to one or more of the individual defendants that he had been issued a bottom bunk pass and that, due to his medical conditions, it would be exceptionally dangerous for him to sleep on a top bunk.

29. The individual defendants ignored plaintiff's complaints and ordered him to use the top bunk.

30. Plaintiff remained assigned to the top bunk for the next several days.

31. During that time period, plaintiff repeatedly complained to one or more of the individual defendants that he had a bottom bunk pass and, due to his medical conditions, should be assigned to a bottom bunk.

32. The individual defendants ignored plaintiff's complaints and refused to reassign plaintiff to a bottom bunk.

33. During the evening of August 10, 2009, plaintiff was attempting to climb down from the top bunk when he suffered either a seizure or momentary loss of consciousness due to his heart condition.

34. As a result of the seizure and/or plaintiff's loss of consciousness, plaintiff fell to the floor, injuring both his left hand/wrist and his right ankle.

35. Plaintiff was taken to an outside hospital where he received medical treatment for his injuries.

36. Plaintiff was released from the Philadelphia Prison System on August 15, 2009.

37. Thereafter, plaintiff was required to undergo continued treatment for his injuries, particularly for the injury to his left hand/wrist, as follows:

      a. In mid-September, 2009, plaintiff was admitted to a hospital due to serious swelling and loss of sensation in the hand, and, at that time was diagnosed with Carpal Tunnel Syndrome, nerve compression, and other conditions.

      b. After the swelling subsided, many months later, in March 2010, an orthopedist concluded that plaintiff continued to suffer from Carpal Tunnel syndrome and nerve damage.

38. During his incarceration at the Curran-Fromhold Correctional Facility, plaintiff was assigned to live in at least two separate housing areas known, respectively, as B1 Pod 2 and B2 Pod 1.

39. During plaintiff's incarceration at the Curran-Fromhold Correctional Facility, each of the individual defendants was at some point assigned to work as a housing officer or a supervisor in the above-referenced areas where plaintiff was housed.

40. To the extent any of the individual defendants did not directly speak with plaintiff, each such defendant was aware or reasonably should have been aware of plaintiff's need for bottom bunk accommodations and plaintiff's complaints concerning the denial of his request for a bottom bunk.

41. At all relevant times, all defendants were aware of plaintiff's serious medical needs yet took no action to accommodate those needs, and, as such, were deliberately indifferent to plaintiff's serious medical needs.

42. The conduct of all defendants resulted in a state-created danger to plaintiff as the harm caused to plaintiff was foreseeable and fairly direct, defendants acted in willful disregard for the safety of plaintiff, defendants' actions created a relationship between the state and

7

plaintiff, and defendants used their authority to create an opportunity for injuries that otherwise would not have occurred.

43. At all times relevant to this Complaint, the conduct of all defendants was shocking to the conscience and/or deliberately indifferent.

44. At all times relevant to this Complaint, the conduct of the individual defendants was in willful, reckless and callous disregard of plaintiff's rights under federal and state law.

45. As a direct and proximate result of the conduct of all defendants, plaintiff suffered substantial damages, including physical injuries as described above, emotional distress and trauma, loss of the enjoyment of life, and financial losses, some or all of which may be permanent.

## CAUSES OF ACTION

### Count I
### Plaintiff v. Individual Defendants
### Federal Constitutional Claims

46. The actions of the individual defendants constituted cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments to the United States Constitution and/or violated plaintiff's right to due process of law under the Fourteenth Amendment to the United States Constitution.

47. The actions of the individual defendants resulted in a state created danger in violation of plaintiff's right to due process of law under the Fourteenth Amendment to the United States Constitution.

## Count II
### Plaintiff v. Defendant City of Philadelphia
### Federal Constitutional Claims

48. The violations of plaintiff's constitutional rights as described above, plaintiff's damages, and/or the conduct of the individual defendants were directly and proximately caused by the actions and/or inactions of defendant City of Philadelphia, which has encouraged, tolerated, ratified and has been deliberately indifferent to the following policies, patterns, practices and customs and to the need for more or different training, supervision, investigation or discipline in the areas of:

   a. Correctional officers' compliance with orders from prison medical staff regarding bottom bunk status;

   b. Correctional officers' response to inmate complaints concerning prison failures to accommodate serious medical needs; and

   c. Prison population overcrowding resulting in failures to comply with orders from prison medical staff regarding bottom bunk status.

## Count III
### Plaintiff v. Individual Defendants
### State Law Claims

49. The actions of the individual defendants constitute a violation of the common law duty to protect and the tort of reckless disregard of safety under the laws of the Commonwealth of Pennsylvania.

**Wherefore**, plaintiff respectfully requests:

A. Compensatory damages as to all defendants;

B. Punitive damages as to the individual defendants;

C. Reasonable attorney's fees and costs as to all defendants;

D. Such other and further relief as may appear just and appropriate.

Plaintiff hereby demands a jury trial.

Jonathan H. Feinberg
I.D. No. 88227
KAIRYS, RUDOVSKY, MESSING & FEINBERG LLP
The Cast Iron Building
718 Arch Street, Suite 501 South
Philadelphia, PA  19106
215-925-4400
215-925-5365 (fax)
jfeinberg@krlawphila.com

*Counsel for Plaintiff*

10